IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA <br> Plaintiff <br> vs <br> 1) OMAR MARRERO-CRUZ <br> (Counts 1, 2, 3, 4, 5, 6, 7 and 8) <br> 2) CARLOS OLIVERAS-GONZALEZ <br> (Counts 1, 2, 3, 4, 5, 6, 7 and 8) <br> 3) SAMUEL BRISTOL-MARTIR <br> (Counts 1, 6, 7, 8, 9, 10) <br> 4) ALVIN FLORES-BOSQUEZ <br> (Counts 1, 6, 7, and 8) <br> 5) FRANCISCO SANTIAGO-ALBINO <br> (Counts 1, 9 and 10) <br> 6) JAMILL AGUILA-BARRIOS <br> (Counts 1, 2, 3, 4, 5, 6, 7 and 8) <br> Defendants | CRIMINAL 05-0235CCC |

**O R D E R**

During the formal charge conference the Court informed the parties that it understood that defendant Francisco Santiago-Albino had established a basis for a defense of actual public authority, thereby entitling him to an instruction on said defense.  The issue of the public authority defense as to the remaining three defendants, Omar Marrero-Cruz (Marrero), Carlos Oliveras-González (Oliveras) and Samuel Bristol-Mártir (Bristol), was argued to the Court by their counsels.  All defendants abandoned the estoppel by entrapment defense which they had also announced.

Regarding the actual public authority defense, these three defendants tendered a factual foundation based only on the conversation between defendant Oliveras and Commander Antonio Rivera-Estela of the Puerto Rico Police Department, Arecibo Area.  During his testimony as a government witness, Commander Rivera-Estela stated that towards the end of 2004, officer Oliveras visited him at the Arecibo headquarters to inform that he had been approached regarding an offer to protect and transport drugs for which he would be paid.  When Rivera-Estela inquired as to who was behind that, if a fellow officer or a civilian, according to the

witness Olivera-González answered that it was Marrero, whom Oliveras acknowledged was the same Marrero who worked in the communications center in Arecibo. Once Marrero was identified as the person Oliveras was referring to, then Rivera-Estela asked him if any person had ties to Marrero, to which Oliveras answered: "Jamill." Rivera-Estela then inquired if Oliveras knew Jamill, to which he answered "no, by reference." According to Rivera-Estela, Oliveras also informed that he was being invited by Marrero to a meeting in San Juan. Rivera-Estela testified that he then told him that what he was informing had to be channeled through the drug division in Arecibo or San Juan. He told Oliveras to give him the opportunity to get in touch with Captain Manuel Portalatín, who directed the Arecibo Drug Division, and to get him information on Jamill so that he would have more clear information when he went to speak to the Captain regarding what Oliveras was informing him. He testified that was the end of that conversation, that he gave Oliveras his cell phone on the first occasion, that two or three weeks later they met again. During this second meeting, Rivera-Estela testified as follows: "I asked, and he said, he hadn't obtained information about Jamill; I asked and he said the San Juan meeting had been cancelled." They decided to meet in the future so that Rivera-Estela could provide information to the Captain. This meeting was never held because according to Rivera-Estela he was informed by C.I.C. agent Héctor Del Río, Director of the Criminal Intelligence Division of the Arecibo Area, that both Marrero and Oliveras were under investigation by the F.B.I. During cross-examination by Oliveras' counsel, Rivera-Estela testified that he told Oliveras to get him everything about "Jamill," referring to name and vehicle he used, which he would pass on to Captain Portalatín. It is this instruction or order by Commander Rivera-Estela to defendant Oliveras on which all defendants, except Santiago-Albino, anchor their public authority defense. Marrero and Bristol base such defense on a claimed transfer of authority flowing from Bristol, what was referred to as acting under the umbrella of Oliveras' public authority.

The First Circuit in U.S. v. Holmquist, 36 F.3d 154, 161 (1st Cir. 1994), rejected the apparent public authority defense as non-existent. At footnote 7, the Court stated that "the nonexistent defense of apparent public authority . . . must not be confused with the potentially viable defense of actual public authority, which may come into play when a defendant undertakes certain acts, reasonably relying on the statements of a government agent cloaked with actual authority." We have reexamined the relevant trial testimony and conclude that there is no basis

for an instruction on the defense of actual public authority, as claimed by defendants Oliveras, Marrero and Bristol. These defendants have attempted to extrapolate Rivera-Estela's order or instruction to obtain information on Jamill, whatever that information may have been, as an authorization to become involved in the acts in question. There is nothing in the evidence that establishes that Rivera-Estela authorized Oliveras to participate in the transportation of drugs and to receive payment for such activity. Rivera-Estela's testimony is undisputed with regard to what he asked for--simply information regarding the person identified only as Jamill--in order to pass that information on to Captain Portalatín of the Drug Division in Arecibo. There is no factual basis establishing a reasonable reliance by Oliveras on the Rivera-Estela's statements which would trigger him to participate in the drug activity alleged. What the evidence does show is that Oliveras never acted on Commander Rivera-Estela's request for information on Jamill, despite the several contacts that he had with him after his conversations with Rivera-Estela.

Having found that Oliveras was not authorized by Rivera-Estela to undertake the acts in question regarding drug trafficking, and that his participation in such activity was not triggered by any reasonable reliance on Rivera-Estela's request for information on the one person, Jamill, whom he identified as having ties to fellow officer Marrero, who allegedly invited him to become involved in the criminal activity, the request for an instruction on public authority by defendant Oliveras is DENIED, as is the same request by defendants Marrero and Bristol, whose claims are based on Oliveras' alleged authorization derived from Commander Rivera-Estela's statements.

Regarding defendant Francisco Santiago-Albino, there exists sufficient evidence for a reasonable jury to find in his favor on the defense of actual public authority based on his version that, following fellow officer Bristol's instructions, on April 6, 2005 he conducted himself as a law enforcement officer who was providing protection to Bristol and who relied and trusted him throughout the day's activities. In assessing the sufficiency of the evidence in order to determine if defendant is entitled to this instruction, the Court cannot engage in credibility considerations regarding his version.

Regarding the request for an instruction on the defense of coercion raised by the same three defendants, the same is DENIED, for there is no evidence that they were forced to participate in criminal activity by any of the other persons involved in the criminal venture. The tough talk about "Colombians," 'dangerous people' and "three shots to the head" were not

CRIMINAL 05-0235CCC                                4

directed at them individually.  The statement regarding the shots to the head was made in the context of what could possibly happened to a person such as Canino or José Juarbe if they paid less than they had promised to someone after he transported their drugs.  The statement was not a threat to defendant Bristol nor is there any evidence that Marrero, who was not part of the conversation, ever learned about it.  In any event, there is no evidence that these statements forced defendants to involuntarily joined the others in criminal activity.  All of this talk arose after they had associated with the other participants in the acts in question.

The terms duress and coercion have been used interchangeably as a single defense.  The First Circuit in U.S. v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996), found that a defendant must meet the entry level burden of proving the three elements of a duress defense:  (1) an immediate threat of serious bodily injury or death (2) a well-grounded belief that the threat will be carried out, and (3) no reasonable opportunity to escape or otherwise to frustrate the threat.  None of these elements have been shown to exist.

For the reasons stated, the instruction on a defense of coercion requested by defendants Marrero, Oliveras and Bristol is DENIED.  No such request was made by defendant Santiago-Albino.

SO ORDERED.

At San Juan, Puerto Rico, on March 21, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge